Eleanor Dabrowski, Minor by John Dabrowski, Her Father and Next Friend, Appellant, v. Illinois Central Railroad Company, Appellee.

Gen. No. 40,645.

Heard in the first division of this court for the first district at the April term, 1939. Opinion filed December 22, 1939.

Bowe & Bowe, of Chicago, for appellant; Augustine J. Bowe and John D. Casey, of Chicago, of counsel.

John W. Freels and Herbert J. Deany, both of Chicago, for appellee; Edward C. Craig, Vernon W. Foster and Charles A. Helsell, all of Chicago, of counsel.

Mr. Presiding Justice Matchett delivered the opinion of the court.

Plaintiff, at the time of the occurrence on which her suit is based, was a child nine years of age. She lived with her parents at 314 E. 157th street, Harvey, Illinois, in Cook county. The building was a two flat. A family named Myers lived in the lower flat. The Myers family also occupied the basement. However, the children of both families played there at times. The build-

ing was located 6 or 7 blocks east of the right of way of defendant railroad.

On Saturday, June 27, 1936, two boys of the Myers family, John, then 10, and Edward, 13 years of age, while on their way home from the business district of Harvey, were walking on the east side of Commercial avenue, a public highway running north and south, parallel and adjacent to defendant's right of way and tracks north of 157th street, an east and west highway intersecting Commercial avenue. South of 157th street, Commercial avenue was known as West avenue. The boys saw a red light burning on the embankment upon which defendant's tracks were laid. They walked over to it, and Edward Myers picked it up. It was a fusee, an article much used in the railroad business. The fusee was lying on the embankment of defendant's right of way at a point about 50 feet north of the 157th street subway and a few feet west of the west line of Commercial avenue. The fusee was not stuck in the ground by its spike but was lying on the slope with a rock under it. It was about half burned out. Edward Myers knew what the article was. He put the fire out, carried the fusee home and put it under a box in the basement. Benny, the little brother of plaintiff, was in the basement at the time and saw where the fusee was placed. Edward warned Benny not to "bother" with the fusee. On the next day (Sunday, the 28th) Benny went alone to the basement and without permission from anybody took and carried away this fusee. Benny knew what a fusee was. He says he had seen the men throw them off the railroad. He carried the fusee to the back yard and porch in the rear of the building. He lighted some papers with a match, put this burning paper against the fusee, and, he says, it went off like a skyrocket. He held the fusee against a wooden board which was part of the building. Plaintiff, Benny's sister Eleanor, was with him, wearing an "organdy" dress. It was light, filmy, and blew in the

wind. A white thing, Benny says, was sputtering. The dress caught fire. Eleanor and Benny cried out. Their mother came, and with much effort put out the fire, but not until plaintiff was badly burned. Plaintiff was taken to a hospital.

Plaintiff sued defendant railroad charging negligence with respect to the fusee. The cause was tried by a jury. At the close of the evidence there was a motion by defendant for a verdict in defendant's favor. Ruling thereon was reserved. The jury returned a verdict for plaintiff in the sum of $22,500. Defendant made motions for a new trial and for judgment notwithstanding the verdict. The last named motion was allowed and judgment entered for defendant, from which plaintiff appeals.

The record presents the question of whether there is any evidence from which the jury, under the law, could reasonably return a verdict for plaintiff. *Provenzano v. Illinois Central R. Co.*, 357 Ill. 192.

Defendant argues the judgment in its favor is right because the evidence wholly fails to prove defendant was connected in any way with the fusee in question. It was, of course, essential to show this connection. Defendant cites cases such as *Conreaux v. Industrial Commission*, 354 Ill. 456; *Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan*, 271 U. S. 472, 478; *Atchison, Topeka & Santa Fe Ry. Co. v. Toops*, 281 U. S. 351, 355 and *Sward v. Megan*, 284 Mich. 421, 279 N. W. 886, to the point that a court may not substitute speculation, conjecture or surmise in place of proof. Defendant also calls attention to *Rumbold v. Supreme Council Royal League*, 206 Ill. 513, 520, to the effect that the existence of a fact which must be affirmatively proved by plaintiff is never presumed from the mere absence of facts showing the contrary. A fusee is attached to the record by stipulation of the parties as illustrative of the type of fusee used by railroads generally. This is not the fusee of the accident, which Benny threw away in a field and which has never been found. The

attached fusee was manufactured by the Central Railroad Signal Company, and it is admitted that fusees made by that company were used by defendant. The uncontradicted evidence is to the effect that the fusee taken home by Edward Myers was found on defendant's right of way. Possession might justify an inference of ownership, and plaintiff, while admitting there is no direct evidence of defendant's connection with the fusee, says the circumstantial evidence is sufficient and convincing.

The track of defendant nearest to Commercial avenue was a switch track 35 feet west of the west boundary line of the street. The main track of defendant's road at this place ran on an embankment which was 70 feet from this west line of Commercial avenue. An ordinance of the city of Harvey gave defendant an easement in a part of this street. Defendant says that the evidence of Marble, a former employee of defendant, who testified as a witness for the plaintiff, as first given tended to show that a fusee thrown from the engine of defendant's train would have been 130 feet further north than the point where the fusee was found by the Myers boys, or if thrown by other of the trainmen would have been as far as 1,500 feet north of 157th street. Later Marble gave testimony to the effect that fusees were used by engineers on defendant's trains in making inspections of their engines while waiting at 157th street before entering the Markham Yards of defendant, which were located some distance south of 157th street. Defendant insists that this evidence of Marble should be given little weight. That question, however, was for the jury.

Edward Myers testified that he saw the fusee burning when he was a half block away; John Myers said he saw it when 200 feet away from it. When it was picked up it as about half burned, and the evidence showed that it took a fusee of this kind about 10 minutes to burn up. Apparently, therefore, it had been placed where it was only a few minutes before it was

found. Both boys said the fusee was of the type in general use by defendant. A witness, who for several years had lived at 194 E. 157th street, about 300 feet from defendant's right of way, testified that children played in the vicinity of 157th street and north on Commercial avenue; that she had seen fusees, some burning, some burned out, thrown on defendant's right of way from the trains; that children picked them up; that the fusees were generally thrown after 5:00 p. m. and were thrown from trains, some of which ran north and some south. For the most part these were thrown from the middle of the train. She had seen a train stop, and a man put one of these fusees in between the ties of the track; the children took the fusees that were thrown down from the embankment, and at times took them burning; children would congregate there and play on the embankment; she had seen them ride their bicycles up and down the embankment. The defendant points out that the fusee was picked up the week before the 4th of July, when similar types of flares were used for red lights. Further, defendant says, trucks using Commercial avenue were by law required under some circumstances to use fusees. However, the right of way belonged to defendant. Employees of lessee roads using these tracks were in law the agents of defendant. *Chicago & Erie R. Co. v. Meech,* 163 Ill. 305; *Pennsylvania Co. v. Ellett,* 132 Ill. 654; *Wagner v. Chicago & A. R. R. Co.,* 265 Ill. 245. The particular type of fusee was in general use by defendant. There was this testimony that the employees of defendant had been seen throwing fusees lighted and unlighted on the embankment. There is no evidence that any person other than an employee of the defendant or of its lessees at any time put any fusee on defendant's right of way. We hold the jury could reasonably find under the evidence that the fusee was placed on defendant's right of way, where found, by an employee for whose act defendant was respon-

sible. There is no other reasonable hypothesis. If defendant's employee did not put the fusee there, much evidence which could have been introduced to that effect was in possession of defendant and was not produced. We think the evidence on this point was prima facie sufficient and could not be overcome by mere surmise or conjecture. We hold this question of the connection of the defendant with the fusee was for the jury (and is settled in favor of plaintiff by its verdict).

The next question arising is, assuming an employee of the defendant placed the fusee where it was found, was the act an act of negligence with respect to plaintiff. It is argued in behalf of plaintiff it is upon the theory of attractive nuisance. Plaintiff says the lighted fusee was placed on defendant's track in a closely built-up section of the city of Harvey; that defendant's right of way at that point extended into a public street over part of which defendant by ordinance had an easement. The defendant says that the doctrine of attractive nuisance is not applicable because the child injured was not attracted to the premises by the supposed alluring thing, the fusee. The law in this respect has been much extended in recent years. In *Engel v. City of Chicago,* 290 Ill. App. 604 (Abst.), we held that a jury was justified, as a matter of law, in holding the city of Chicago liable to a boy injured by explosive material in a can found by the boy on a dumping ground maintained by the city in a place which had been laid out as a public street. The defendant there contended, as here, that the child injured was not attracted or allured to the premises by the qualities of the thing which caused him to trespass and there could be no recovery on the attractive nuisance theory for that reason. We held that where the nuisance was located on a public highway, or where it was located on private property upon which to the knowledge of the owner, either actual or implied, children were in the habit of congregating, the rule as to

the necessity of allurement to the premises would not prevail. In support we cited *Flis v. City of Chicago,* 247 Ill. App. 128; *Wolczek v. Public Service Co. of Northern Illinois,* 342 Ill. 482. In *O'Donnell v. City of Chicago,* 289 Ill. App. 41, we held, in a case where a boy was injured while climbing a telephone pole, that the case might be brought within the attractive nuisance theory if the alluring thing was so placed as to be a part of the general environment which was attractive to children. We admit this seems to leave little of the general rule. It is believed, however, to accurately state the law as it now is. In the Restatement of the Law of Torts, ch. 13, p. 920, sec. 339, it is said in substance that a possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by structure or artificial condition which he maintains upon the land if, "a. The place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass." This case is, of course, distinguishable in the fact that plaintiff was not injured upon the right of way of defendant, and in so far as the briefs disclose there is no case in which a defendant has been held liable under such circumstances. Plaintiff, however, suggests in this connection that the jury could reasonably find defendant liable upon the theory that the fusee found by the Myers boys was inherently and intrinsically dangerous. The rule of law in Illinois with respect to such articles is that the possessor is under a duty in handling the same to use a degree of care commensurate with known risks. This was held in *Haas v. Herdman,* 284 Ill. App. 103, 108, 110, where the dangerous article was dynamite, and *Bunyan v. American Glycerin Co.,* 230 Ill. App. 351, 357, where the dangerous article was nitroglycerin.

Able counsel in this case realized the importance of this issue, and much evidence was taken on the question of whether the fusee found was an article that was

inherently dangerous. A chemist from the bureau of explosives testified as to the chemical contents of fusees. He said these were the same as in fireworks; that a fusee was simply "red fire." Professor Evans of Northwestern University corroborated and gave an elaborate chemical explanation of the character of the combustion which takes place when a fusee of this type is burning. Plaintiff admits that under customs which existed 40 years ago children were encouraged to make use of articles of this kind as a patriotic duty. It is, however, said that experience has changed public opinion. It is urged that the law should recognize the change. Confirming, attention is called to the provision of the Criminal Code regulating the use of fireworks. (Ill. Rev. Stat. 1937, ch. 38, p. 1133, par. 276 [Jones Ill. Stats. Ann. 53.059].) The definition of fireworks in that statute, plaintiff says, covers precisely such articles as the fusee. Plaintiff quotes the language of the witness, Prather, an engineer with the bureau for the safe transportation of explosives and other dangerous articles, explaining how the fusees burn. He said: "You have often seen—take fireworks and red light and burn it, and after it was burnt out why there was a lot of white stuff lying on the ground after it was all over. That is just the same proposition." Plaintiff points out that Conway, one of defendant's witnesses, said he would not put these articles where a child could get them readily, and that it was sensible to keep them away from children. Mr. James of the Underwriters' Laboratory said that he did not recommend leaving the fusees lying around in places at the disposal of children or places where a child could get near them. There was much similar testimony. We do not think it can be held on the facts as here disclosed that a fusee of the kind found on defendant's right of way was an inherently dangerous article such as dynamite was found to be in the *Haas*

case or nitroglycerin in the *Bunyan* case. So far as the briefs disclose this is the only occurrence coming to the attention of the courts where the use of a fusee has resulted in damage. From the fact that legislation has been enacted regulating the manufacture, sale and use of fireworks (Laws of 1935, p. 881, Ill. Rev. Stat. 1937, ch. 38, pp. 1133–1135 [Jones Ill. Stats. Ann. 37.213(1)–37.213(26)]), the plaintiff draws the inference that the fusee in question was inherently dangerous. Section 11 of that act provides:

"Nothing in these regulations shall be construed as prohibiting the manufacture, storage or use of signals or fusees necessary for the safe operation of railroads, trucks, aircraft, or other instrumentalities of transportation."

Section 6 of the same act permits the retail sale of such articles between June 27th and July 4th, each year. The Motor Vehicle Act in force at the time this accident occurred (Ill. State Bar Stats. 1935, ch. 95a, secs. 42 (3)–42 (4)) provided commercial motor vehicles "shall be equipped with and carry red flares, with friction cap ignition, similar in type to the fusee signals used by railroads, or other portable lights, in a sufficient amount or quantity to burn or give light continuously for not less than sixty (60) minutes."

These sections also provide that when such a vehicle was stopped outside any village or town, other than for taking on or discharging passengers, etc., it should from one-half hour after sunset to one-half hour before sunrise give warning by displaying and burning a railroad fusee type of flare. The same requirement in substance is in the present statute (Ill. Rev. Stat. 1937, ch. 95½, sec. 218 [Jones Ill. Stats. Ann. 85.250]) which, however, omits the phrase "railroad type." Mr. Bennisterfer of the Central Railway Signal Company testified that the fusee in evidence was standard equipment on all American railroads. He said his company

sold fusees to truck and bus companies, to the city of Chicago and the city of Hammond. Railroad fusees, he said, burned for 10 minutes. Other types for 30 minutes. The formula for making the fusee is a secret but the flares do not contain explosives. They contain strontium nitrate, sulphur, chloride of potash and sawdust prepared with paraffin. The paraffin makes the composition stick together and slows down the burning time. Strontium nitrate gives the flare a red color; the chloride of potash and sulphur form the burning part. The fusee in evidence is somewhat less than a foot in length; about one-half inch in diameter, and has a spike of steel about an inch long at the end of it. On the paper in which it is wrapped there are specific directions as to the manner of using it. As the evidence we have recited shows, it is an article of high practicable value and is indispensable in the operation of defendant's railroad. Its proper use tends much to the protection of life and property. The rule of law undoubtedly is that when an article is inherently dangerous the owner of it must use the degree of care commensurate with the dangerous character of the article. *Mattson v. Minnesota & N. W. Ry. Co.,* 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503; 25 Corpus Juris 185. We hold, however, there was no evidence from which the jury could reasonably find that the fusee in question was an inherently dangerous instrumentality within the meaning of the law. It was no more dangerous than a lighted match. Our conclusion on this point makes it unnecessary to consider at length another final and conclusive reason why, from the standpoint of the law, the plaintiff may not recover.

If we concede defendant's connection with the article and concede it was negligent in leaving the fusee burning on its right of way; if we concede the article was a nuisance attractive to children, nevertheless, we think it would be held, as a matter of law, that the

negligence of defendant was not the proximate cause of plaintiff's injury. If the article in question had been found to be an inherently and intrinsically dangerous instrumentality, then this question might also have been for the jury. We have seen that it is not such an instrumentality. Under the undisputed facts we hold, as a matter of law, the fusee was not the cause of the injury to plaintiff. We shall not undertake a philosophical discussion of the intricate questions arising out of legal causation. The courts, avoiding questions purely metaphysical, have adopted a practical, sensible and just rule for the determination of this question. Assuming a duty due from one person to another and neglect thereof, liability for the neglect is limited in law to results which reasonably could have been anticipated. Without such a rule people could not safely live in our complex society. The Supreme Court of the United States, in *Atchison, Topeka & Santa Fe Ry. Co. v. Calhoun,* 213 U. S. 1, at page 9 said: "But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that 'if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock on Torts, 8th ed., 41.''

Our own Supreme Court, in *McClure v. Hoopeston Gas & Electric Co.,* 303 Ill. 89, said: "Proximate cause is that which naturally leads to or produces, or contributes directly to producing, a result such as might be expected by any reasonable and prudent man as

likely to directly and naturally follow and flow out of the performance or non-performance of any act."

In a case in which the cause was much more closely connected with the injury than here (*Anderson v. Karstens*, 218 Ill. App. 285), where gasoline cans were left on defendant's unfenced vacant lot and carried by boys to an adjacent alley where later other boys using lighted matches, set fire to the gas and an explosion took place, we said:

"This case, as we view the evidence, discloses that there was the intervention of another and independent element which broke the relation of cause and effect and the supposed negligence of defendant was, therefore, not the proximate cause of plaintiff's injury. This intervening cause in this case was the act or acts of other lads who carried the cans from defendant's lot into the alley, poured the contents of one can into the other and then applied the lighted matches which directly brought about the explosion."

It would unduly extend this opinion to quote further. If other points were decided in favor of plaintiff she could not recover for this reason. The judgment of the trial court will be affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.