Linda Watts, a Minor, by Her Father and Next Friend, William C. Watts, and William C. Watts, Individually, Plaintiffs-Appellants, v. Bacon & Van Buskirk Glass Co., Inc., Mae Greenman and Shirley Sostrin, Defendants-Appellees.

Gen. No. 10,184.

Third District.

December 22, 1958.

Rehearing denied February 6, 1959.

Released for publication February 6, 1959.

John Alan Appleman, of Urbana, for plaintiffs-appellants.

Law Offices of Ray F. Dobbins, of Champaign, by Creed D. Tucker; Reno & O'Byrne, of Champaign, by Donald M. Reno, for defendants-appellees.

PRESIDING JUSTICE ROETH delivered the opinion of the court.

Plaintiffs brought suit for injuries sustained by flying glass occasioned by the breaking of a glass door leading into a drug store. The drug store was leased and operated by the defendant, Harry J. Baker, Jr., the building was owned by the defendants, Mae Greenman and Shirley Sostrin, and the glass door had been installed by defendant Bacon & Van Buskirk Glass Co., Inc., hereinafter referred to as the glass company. The complaint consisted of six counts, three on behalf of the minor plaintiff and three on behalf of her father. Count 1 of the complaint on behalf of the minor charged Harry J. Baker, Jr. with negligence, Count 2 charged the owners of the building with negligence and Count 3 charged the glass company with negligence. The three counts on behalf of the father were identical. The case was tried before a jury and at the close of plaintiffs' evidence the court directed a verdict of not guilty as to the owners and the glass company. The jury found Harry J. Baker, Jr. not guilty. This appeal is prosecuted only as to the action of the court in directing a verdict in favor of the owners and the glass company.

At the outset it is conceded that the doctrine of res ipsa loquitur does not here apply and is not involved in this appeal. We are therefore confronted on

166

this appeal with the question of whether there is any competent evidence, standing alone, together with any reasonable inferences to be drawn therefrom, taken with its intendments most favorable to .the plaintiffs, to support the charges that the owners of the building and the glass company were negligent. If not, the motions for directed verdicts on their behalf were correctly allowed by the trial court.

As to the owners of the building, it is alleged that they leased the premises to Baker; that the owners installed the glass door in a defective and dangerous condition; and that the owners undertook the responsibility of maintaining the glass door. The negligence charged was (a) maintaining the glass door in a defective condition, (b) failing to use tempered glass instead of simple plate glass, (c) failure to use safety glass, (d) failure to make the door handle accessible to infant invitees, (e) use of a glass door of insufficient strength to withstand day to day pressures of persons entering, (f) failure to properly examine the door prior to installation for defects. As to the glass company, it was alleged that it was employed by the owners to install a safe and appropriate glass door; that it was the duty of the glass company to use skill in the selection of the type of door; and that the type of door installed was an inherently dangerous instrumentality considering the volume of traffic. The negligence charged against the glass company is the same for all practical purposes as that charged against the owners.

■ ■ Considering first the question of the liability of the glass company, it is not disputed that it occupies the status of a contractor employed by the owners of the building through their agent. It is a well established general rule that, where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suf-

167

fered by reason of the condition of the work, in the absence of special circumstances. 65 C. J. S. Par. 95(b), page 613; Colbert v. Holland Furnace Co., 333 Ill. 78, 164 N. E. 162; Paul Harris Furniture Company v. Morse, 10 Ill.2d 28, 139 N.E.2d 275. There are well recognized exceptions to the general rule, one of which is that the contractor is liable where the work is inherently or intrinsically dangerous. 65 C. J. S. Par. 95(b), page 614; Paul Harris Furniture et al. v. Morse, supra. This is apparently the basis upon which the plaintiffs seek to hold the contractor liable. The term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with regard to it to prevent injury and does not mean danger which arises from mere casual or collateral negligence of others with respect to it under particular circumstances. Concisely stated, the term means, dangerous in its normal or nondefective state as for example, explosives and poisons.

■ We have carefully examined the plaintiffs' testimony in the record before us and we cannot find any evidence, direct or from which reasonable inferences could be drawn, which would place the glass door in question, within the category of an inherently dangerous instrumentality. This being true, the case as to the glass company does not fall within the exception upon which the action against it was predicated and hence the trial court was correct in directing a verdict in favor of the glass company.

A determination of the correctness of the courts directing a verdict in favor of the owners, requires, in the first instance, an analysis of the testimony. In doing this we are required to view it in its light most favorable to plaintiff. This is true even though there may be a conflict or some discrepancies. What is here-

168

inafter set out, therefore, is the most favorable aspect of the testimony.

On the evening of October 30, 1955, plaintiff William C. Watts, accompanied by his two minor daughters, started to enter the drug store of Harry J. Baker, Jr. It had snowed, rained and sleeted in the afternoon of the day in question and at the time of the occurrence the temperature was about freezing. William C. Watts was holding his daughter Betty with his right hand and the plaintiff Linda with his left hand. Entrance to the drug store was gained through a glass door mounted in a metal frame. The door opened toward the sidewalk from an east to west direction. As they reached the door, William C. Watts released the hands of both girls and reached out to open the door. As he touched the door handle or while in the act of reaching for it there was an explosion noise and the lower two thirds of the glass broke out of the door in small and large jagged pieces. These pieces of glass struck the plaintiffs Linda and William C. Watts causing the injury complained of.

The building in which Bakers Pharmacy is conducted was owned by the defendants Mae Greenman and Shirley Sostrin and the property was looked after and rents were collected by Hyman Greenman, the husband of Mae and father of Shirley. Harry Baker, Jr. was the tenant in possession. He made any repairs to the premises *except* that if anything was to be done Hyman Greenman was consulted. The store sold such items as are commonly found in drug stores, had a food counter and was also used as a sub-postal station. Hundreds of customers entered the store daily and in the opening and closing of this entrance door persons, packages and other articles came in contact with the glass door.

A glass door was installed in January, 1955. The circumstances of its installation are important. Defend-

169

ants Mae Greenman and Shirley Sostrin, at the time of the installation of the glass door, had been remodeling the Baker Pharmacy store front. It is a reasonable inference that Hyman Greenman was acting as their agent in the performance of this project. An architect had designed the store front. The remodeling cost was paid by Mae Greenman and Shirley Sostrin. The architect in the original drawings had specified tempered glass for use in the door and this type was available at the glass company. In January, 1955, Hyman Greenman went to the glass company and talked with the president about installing a glass door and the type of glass to be used. They talked about the different types of glass that could be utilized and it is possible that the difference between plate glass and tempered glass was explained to Hyman Greenman. In any event, the difference in price was discussed and it was explained that plate glass was cheaper. Hyman Greenman wanted an inexpensive door and ordinary plate glass of ¼ inch thickness was used with the approval and agreement of Greenman. In April or May, 1955, the original plate glass door was broken by someone striking the glass. It was replaced with the same type plate glass. The glass placed in the door after the incident of October 30 was of a different type.

So far as here material, the testimony also reveals that plate glass is polished on both sides after it is drawn; that it scratches more easily than tempered glass; that contact with plate glass by bodies, clothing, purses and other objects would create a tendency for surface abrasions or roughening which reduces its strength; that when it breaks it shatters in sharp edged pieces. On the other hand, tempered glass is strongest of the types of glass; it is five times stronger in flexure and impact resistance; it is very difficult to scratch and is so tough it can be struck with a hammer without

170

breaking it; when it does break it breaks within itself and is not strewn out and the broken parts have rounded edges and are quite harmless in contrast to sharp jagged edges of broken plate glass.

Counsel for the owners of the building contend that there was no evidence of negligence on their part and that the lessee and not the owner is responsible for injuries received in consequence of a failure to keep the occupied premises in repair. It is the general rule that a landlord who has relinquished full control and possession of demised premises to a tenant, ordinarily is not liable for personal injuries suffered by a third person because of the tenants' negligence or because of the defective condition of the premises arising after the beginning of the lease. I. L. P. Landlord and Tenant, Par. 309, and cases there cited. The basic reason for the rule is that, assuming that the premises are in good condition when leased, as the law grants possession thereof to the tenant, the landlord's right of entry and possession being suspended during the term, if during the term, through the fault of the tenant the premises become unsafe, the tenant and not the landlord is liable to the third person by reason of the defective condition. This rule is subject to many exceptions. Thus where a landlord assumes to repair or improve leased premises even though not obliged to do so, he thereby becomes subject to the duty of acting carefully if he acts at all. A landlord in this situation is not charged with liability on the basis of nonperformance. He is charged with liability because having chosen to perform he has thereby become subject to a duty in respect of the manner of performance. Roesler v. Liberty National Bank of Chicago, 2 Ill.App.2d 54, 118 N.E.2d 621; see annotation 150 A. L. R. 1373.

Basically the negligence that is charged against the owners is, that they selected a type of glass

171

for the door which was not reasonably safe, taking into consideration the character of the store, the amount of traffic in and out and kindred factors. Aside from the question of their right to control the store front and door in question, they assumed to make the improvement in question. They knew of the use to be made of the leased premises and the nature and character of the traffic in and out. It is a reasonable inference from the testimony that they knew that the architect had specified tempered glass for the door and not plate glass. The intendment most favorable to the plaintiffs is that the difference between the two types of glass was explained to the owners' agent. Coupled with the fact that the door had broken on a prior occasion, it is a reasonable inference that they knew or were chargeable with knowledge that the type of glass used was not suitable for the intended use. There is a duty on all persons to exercise care to guard against any injury which may naturally flow as a reasonably probable or foreseeable consequence of the act. It is not dependent upon a contractual relationship between the parties or representations or warranties.

It is our opinion that the testimony in this case, when viewed most favorably for plaintiffs, prima facie meets the requirements of actionable negligence on the part of the owners and that a question of fact for the jury was thereby presented. The trial court was in error in directing a verdict for the owners.

Accordingly the action of the trial court as to the glass company is affirmed and the action of the trial court as to the owners is reversed with directions to grant plaintiffs a new trial as to such owners.

Affirmed in part and reversed and remanded in part.

CARROLL and REYNOLDS, JJ., concur.