431 P.2d 985

**Brent WHEELER, a minor, by Arlene Turley, his guardian ad litem, and Arlene Turley, Plaintiffs and Respondents,**

**v.**

**Dennis C. JONES and Charles R. Jones, dba Sunplay Pool and Garden Center, Defendants and Appellants.**

**No. 10597.**

Supreme Court of Utah.

Sept. 21, 1967.

---

5. Martin v. Sevens, supra, n. 2; Badger v. Clayson, 18 Utah 2d 329, 422 P.2d 665 (1967).

Robert W. Brandt, Salt Lake City, for appellants.

Richard H. Thornley, Ogden, for respondents.

ELLETT, Justice:

The plaintiff, Brent Wheeler, a twelve-year-old lad, paid twenty cents for the privilege of swimming in a pool operated in connection with defendants' business of selling garden supplies and swimming pools and equipment. The pool was used exclu-

sively by children from four to fifteen years of age. Approximately thirty-six children per day were permitted to swim in the pool in groups of twelve per each two-hour shift.

Entrance to the pool was through a doorway leading from the store which could be closed by a sliding glass door. Plaintiff had been in the pool on two other occasions, and at all times the glass panel had been slid so that the doorway was open. On the day in question plaintiff entered the store from the pool area to look at a clock to check the time he had remaining of his two-hour swimming session. While he was swimming, someone had partly closed the glass panel, so that the middle part of the frame divided the doorway. Plaintiff entered through the doorway without mishap, set his watch to agree with the clock on the wall, and walked into the glass part of the panel which blocked his exit. The glass fractured, and he received lacerations, for which he sues through his guardian ad litem.

He claims the defendants were negligent in failing to have a horizontal metal bar across the sliding door or in not having a decal posted on the glass to give warning and draw attention to the glass obstruction across the doorway. He also claims that the defendants should have replaced the ordinary glass in the sliding door with a form of safety glass.

On a special verdict he failed to get a favorable finding on his claims of negligence except that in regard to the lack of safety glass. The jury answered that the defendants were negligent "in maintaining a glass of thickness of the type in the sliding door in question insufficient to withstand ordinary bumping without breaking or which would remain intact after breaking." The jury further answered that such negligence was a proximate cause of plaintiff's injuries.

In answer to another question the jury found that the plaintiff was not himself contributorily negligent.

The court ordered judgment to be entered upon the special verdict, and the defendants appeal therefrom.

We must affirm if there is substantial evidence to sustain these findings unless there is reversible error in rulings made by the court.

The question of negligence of the defendants is predicated upon their leaving a weak, dangerous type of glass in the sliding door after the community at large became aware of the perils involved in having such glass in the door. The type used would rupture at one-fifth the pressure of tempered glass and would break with sharp jagged edges, while tempered glass when broken would fracture into very small particles and be harmless so far as cutting a person is concerned. There were two other types

of glass considered safe for sliding doors, namely, laminated glass consisting of two sheets of glass with a plastic interlay in between, and glass with an imbedded wire mesh, both of which prevent sharp edges from occurring when the glass is broken.

The defendants did not install the glass in the door and claim that since sheet glass looks like tempered glass, they could not be negligent in failing to replace it. The expert witness said that tempered glass had "nipple marks" near the edge where the glass was held by tongs while being tempered, and one could tell tempered glass by looking for these marks.

The expert witness further testified that in 1963 "it [the community] was becoming quite aware that these sliding glass doors were dangerous." He further testified that all schools and churches where the children were involved use such safety glass in sliding doors and that the F. H. A. specifications prevented the use of ordinary glass in such doors unless the door was equipped with a horizontal metal bar.

■ Plaintiff's counsel then asked the question, "Now, does F. H. A. have any other requirements on sliding glass doors other than the bar?" An objection was made by the defendant and overruled by the court, who stated, "You may answer the question, and the jury may consider it as standards of the community."

It will be noted that the court did not say that it was *the standard* of the community—, rather, he seeemed to imply that it was *one of the standards* of the community in determining whether or not the defendants were negligent.

We think the testimony was proper to show the knowledge of the danger involved and how extensive that information had become. The defendants claimed that they did not know there was any danger in the glass in the door, so this evidence would be helpful in determining whether they should have known of such danger. The testimony given was to show danger and knowledge thereof in order for the jury to determine the question of negligence or lack thereof. The answer of the witness seems harmless in view of the testimony theretofore given, for the witness replied, "Yes. F. H. A. definitely requires a bar in sliding glass doors or a type of safety glass for all construction financed by F. H. A."

While it is true that the weight of authority is against allowing regulations such as those of F. H. A. to be given in evidence, yet there is a respectable authority permitting such evidence to be received. See City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637; Smith v. Iowa Public Service Company, 233 Iowa 336, 6 N.W.2d 123; Vaught's Admrx. v. Kentucky Utilities Company (Ky.), 296 S.W.2d 459; Layne v. Louisiana Power & Light Com-

pany (La.App.), 161 So. 29, affd. 164 So. 345 and modified on other grounds 164 So. 672; Webb v. Louisiana Power & Light Company (La.App.), 199 So. 451; annotation in 75 A.L.R.2d 778, § 3 at 783.

In view of the fact that the answer given by the expert witness was substantially the same as testimony previously received from the same witness without any objection being made, and in the further view that the objection made was because "it was not shown that the regulations were in effect when the building was constructed," we do not think there was any prejudice in allowing the answer nor in making the statement which His Honor made in connection therewith. The issue was not as to whether there was negligence in the original construction of the door, for admittedly the defendants did not construct it. The issue was whether the defendants should have realized that a dangerous type glass should have been replaced with a safety type when small children were constantly at play around the door.

 There is a greater duty imposed by law upon an occupier of land to use care for the safety of his guests, when those guests are children of tender years, than there is when they are mature people. Even with adult guests the occupier has a duty to exercise reasonable care to discover dangerous conditions. The Restatement of Torts 2d, § 343, sets out the requirements as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger. Under Comment e it is said:

In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparations as a reasonably prudent householder makes for the reception of such visitors. On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors.

Also under Comment *f* the statement is made:

A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons. Thus, the keeper of a boarding-house is negligent in providing a gas stove to be used in an unventilated bath-room, although the boarder who is made ill by the fumes uses the bathroom with knowledge of all the circumstances, except the risk of so doing. This is true because the boardinghouse keeper, even though a man of the same class as his boarders, is required to have a superior knowledge of the dangers incident to the facilities which he furnishes to them.

Negligence is the breach of a duty to use due care under the circumstances of the situation. When children are involved, the duty to look out for their safety is increased, and failure to make a given discovery might be negligence when children are involved and not negligence if adults only are affected. It is a relative thing and generally must be left to the jury to say if under all the circumstances the conduct of the actor measures up to the standards of a reasonably prudent man.

Here the defendants sold candy inside the building and had a swimming pool just a few feet outside the door. Children aged four to fifteen were encouraged to swim and play in the water and to buy candy in the store.

All the world must know the tendency of children to play rough and not to have the judgment and maturity of adults.

The community at large had, prior to the accident in question, become aware of the dangers connected with ordinary glass in sliding doors and the need for horizontal metal bars or safety glass even for adults. The serious cuts sustained by the plaintiff are mute evidence of the dangers inherent in the type of door used; and we think it was a jury question as to whether the dangers should have been recognized and corrected. The claim of error in allowing the expert witness to express an opinion that the glass door was dangerous could not be prejudicial when the jury saw the result of a collision between the minor plaintiff and that very door. There could be no question but that the door was dangerous and a menace to those children who were playing near it.

The defendants argue that the plaintiff must have been running when he hit the door. The plaintiff denied that he was and said that he stopped within four or five feet of the door. An employee of defendants stated that the plaintiff stopped within three or four feet of the door, and the jury was well within its rights in finding that the plaintiff could not have stopped so soon had he been running.

We believe that the defendants have had their day in court, and an impartial jury has said that their conduct in leaving a dangerous type of glass in a partly closed door was an act which did not measure up to the standards of due care under the circumstances in the case.

We, therefore, affirm the judgment. The plaintiff may have costs.

CROCKETT, C. J., and TUCKETT, J., concur.

CALLISTER, Justice (dissenting).

The issue of defendants' negligence must rest upon the proposition that either the glass itself presented a source of danger to those using the entranceway in a normal manner or that there were no warning devices to indicate the presence of the glass, and it was otherwise unobservable when a patron used the entrance. As to the latter, the jury found the issues in favor of the defendants. As to the first, it was error for the trial court to submit the issues of the nature of the glass to the jury because there was no evidence to establish that in the use of the entranceway, a reasonably prudent occupier would know or should know that there was danger of contact with the glass in the door.

The testimony of the expert witness, aside from the desirability of adequate warning devices, merely established the fact that it is safer, in case of some negligent act, to use safety glass in sliding doors.

It is important to remember that the defendants did not select the glass [1] and that it was in place when they took possession of the premises. Another important fact is that, in the instant case, the door involved is a sliding rather than a swinging type.

The expert, Mr. Vandenberg, testified, over objection, in regard to the custom of schools and L.D.S. churches to use safety glass in their doors,[2] and that F. H. A. specifications (adopted about four months prior to the accident) required safety glass to qualify for financing of new or remodeled structures. All of this testimony was for the purpose of establishing a community custom of which the defendants were or should have been aware. It was prejudicial error for the trial court to allow this testimony.

In Prosser on Torts, 3d Ed., § 33, it is stated at p. 169:

* * * Custom also bears upon what others will expect the actor to do, and what, therefore, reasonable care may require him to do; upon the feasibility of taking precautions, the difficulty of change, and the actor's opportunity to learn the risks and what is called for to meet them.

---

1. Watts v. Bacon & Van Buskirk Glass Co., 20 Ill.App.2d 164, 155 N.E.2d 333, 337 (1959).

2. Contrary to the statement in the majority opinion, he did not refer to them as being sliding doors.

At p. 171:

> * * * A custom to be relevant must be reasonably brought home to the actor's locality, and must be so general, or so well known, that the actor may be charged with knowledge of it or with negligent ignorance * * *

There was no foundation laid to establish that the schools and churches were similarly situated to defendants, and, therefore their conduct had no bearing on the issue of what was ordinary and reasonable care under the circumstances.

In essence, the witness testified that in the replacement of glass in schools in the area, it was customary to put safety glass in doors young people use. He further stated that most churches, and particularly L.D.S. churches, require safety glass in the doors. The testimony adduced indicated that tempered glass was in common use in swinging doors but not in sliding doors at the time the building, occupied by defendants, was constructed. Thus, a distinction in the two types of doors was established; yet, there was no evidence proffered to indicate that the type of door used by churches and schools was comparable to the one in defendants' establishment.

The trial judge erred when he advised the jury that they could consider F. H. A. specifications as standards of the community. It is not unreasonable to infer that the jury interpreted this statement as meaning that this was the standard of care to which the defendants must conform. Aside from the admissibility of standards of safe construction, they could constitute merely evidence of the standard of care, for the conduct of others is not to be taken as fixing a legal standard for the conduct required by law.[3]

The relevancy and materiality of the F. H. A. specifications were not established. They had been in effect only since April of 1963, and Brent Wheeler was injured in August of the same year. The specifications did not apply to existing structures but only to those currently being constructed or remodeled by F. H. A. financing. Furthermore, the specifications were not safety standards per se, but were construction standards for financing purposes. Finally, many courts have excluded evidence of codes or standards of safe construction issued by governmental agencies; since the codes do not have the force of law, their violation cannot be deemed evidence of negligence; and as mere evidence of standards of due care without force of law, they do not represent accepted scientific truth and constitute no more than unsworn opinions not subject to cross-examination.[4] In the instant case, the F. H. A. specifications, rather than being the standard of the community, appear to be an attempt to alter

---

3. 2 Wigmore on Evidence, 3d Ed., § 461, p. 489.

4. 75 A.L.R.2d, Anno.: Evidence—Safety Codes, § 3(a), pp. 781–782.

the present conduct by the promulgation of new rules, since Mr. Vandenberg testified that approximately 90 to 95% of all the glass installed in sliding doors was the type used in defendants' establishment.

There was no evidence that a reasonably prudent operator of a business such as this, who moved into existing premises, would be put on notice or would find on reasonable inspection [5] that this condition, insofar as the type or thickness of glass was concerned, was defective or unsafe. Furthermore, there was no evidence of prior warning or any indication which might have apprised defendants of the risk involved in maintaining such a nuisance.[6]

For the foregoing reasons, it was error for the trial judge to submit to the jury the special interrogatory as to whether defendants were negligent in maintaining a glass of the thickness or type in the sliding door insufficient to withstand ordinary bumping without breaking or which would stay intact after breaking.

The issue of contributory negligence as presented in this case merits further examination than that contained in the main opinion. The question is whether the injured boy's testimony is susceptible of an interpretation that he exercised that degree of care that is usually exercised by persons of similar age, experience, and intelligence under the circumstances, which is the measure of his duty.[7]

Brent testified that he had been on the premises on at least three prior occasions. When he first entered the premises on the day of the accident he observed that the sliding glass door was open. When he left the pool and re-entered the building to determine the time, he observed that the door had been "shut part way." He stated that he reset his watch, turned around and looked through the door and walked, and that he looked through it again and hit the glass. Specifically, he stated that the first time he looked, he saw "Just the bar with two sides is all * * * I didn't see anything on either side of it." He responded that the bar he observed was the west edge of the sliding door. (When the door is opened it slides in an easterly direction.) When Brent first looked at the door, he testified that he was about ten feet from it and that he looked at his watch and started walking; he then looked again at four feet away and started walking. At the distance of four feet he observed "Just a bar down the mid-

---

5. The fact that Vandenberg testified that tempered glass has "two little nipple marks near the edge" is of no significance.

6. See Restatement of the Law of Torts 2d, § 343, which is set forth in the main opinion. In the Appendix, § 343, p. 192, The Reporter's Notes state:

"Clause (a): The plaintiff invitee has the burden of proving that the defendant possessor either knew or had reason to know of the condition, or that by the exercise of reasonable care would have discovered it * * *"

7. Mann v. Fairbourne, 12 Utah 2d 342, 346, 366 P.2d 603 (1961).

dle. \* \* \* It looked like it had two openings."

This case has a strong similarity to Lopez v. American National Bank of Cheyenne [8] where the plaintiff admitted that he had observed the glass panels, one on each side of the door, when he had entered the bank. The court stated:

> \* \* \* Again the use of these facilities by the plaintiff only a few minutes before his accident gave the plaintiff ample notice and "awareness" of the condition of the entire entranceway. \* \* \*

Brent's testimony indicates that it was his negligence which caused the accident. Not only had he been on the premises on three prior occasions, but also his use and observation of the condition in the brief interim between the time he passed through the entry to ascertain the time and observed the exact position of the door and the time of the accident gave him notice and awareness of the condition of the entranceway.

In the instant case, Brent was charged with the duty of seeing and avoiding the door, since there was no evidence from which it could be inferred that there was something to preoccupy his mind or to distract his attention from his objective of returning to the pool.

In Whitman v. W. T. Grant Co.[9] this court stated:

In order to justify holding that a jury question as to negligence exists, where injury has resulted from an observable hazard, it is essential that there be something which could be regarded as tending to distract the plaintiff's attention or to prevent him from seeing the danger, thus providing some reasonable basis for a finding that even though he exercised due care, he could be excused from seeing and avoiding it. \* \* \*

The instant case clearly falls within the ambit of the Whitman case and, therefore, Brent's inattentiveness and failure to heed what he saw, constitutes contributory negligence as a matter of law and the lower court should have granted defendants' motion for a directed verdict.

HENRIOD, J., concurs in the dissenting opinion of CALLISTER, J.

---

8. Wyo., 389 P.2d 21, 22 (1964).

9. 16 Utah 2d 81, 84, 395 P.2d 918, 920 (1964).