**Edward F. KRULL, Plaintiff,**

**v.**

**KEENE CORPORATION, et al., Defendants.**

**No. 83 C 9635.**

United States District Court,
N.D. Illinois, E.D.

Jan. 15, 1985.

Terrence M. Johnson, Chicago, Ill., for plaintiff.

Joanna C. New, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Edward Krull ("Krull") has sued Keene Corporation ("Keene"), Owens-Corning Fiberglas Corporation ("Owens-Corning") and a number of other asbestos manufacturers in connection with injuries Krull claims resulted from his exposure to asbestos while employed by other companies as an asbestos worker. Owens-Corning has moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Count III of Krull's Complaint (the "Complaint").[1] For the reasons stated briefly in this memorandum opinion and order, the motion is granted.

### Complaint Count III

Complaint Count I sounds in strict liability. Count II alleges negligence and invokes the duty of ordinary care. Count III—which is styled "Negligence-Ultrahazardous Product"—also alleges negligence, but it asserts asbestos is an "ultrahazardous product" such that (Complaint ¶ 23, emphasis added):

The defendants owed the plaintiff a duty *greater* than that of ordinary care.

Owens-Corning argues Count III is defective for two reasons:

1. Illinois courts have adopted strict liability for ultrahazardous *activities,* but no special standards for ultrahazardous *products.*

2. Negligence theory is incompatible with the strict liability concept inherent in the "ultrahazardous product" language.

Krull responds that Illinois law recognizes a product may be so inherently dangerous as to require a manufacturer to take special precautions against injury. Krull Mem. 4–5 argues:

[Count III] seeks only ... to allow testimony and evidence to be presented at trial on the issue of the inherently dangerous and ultrahazardous nature of asbestos and asbestos products so as to ·require under Illinois law the imposition of "special precautions" and the corresponding duty which is greater than ordinary care.

### Duty of Care

■ Krull's counsel appears simply to misunderstand the duty of ordinary care. That concept—and therefore Count II—encompasses precisely the type of evidence and argument Krull seeks to introduce under Count III. "Ordinary care" is by definition a reasonableness standard whose application varies with the circumstances.

■ As Prosser and Keeton on the Law of Torts § 34, at 209 (5th ed. 1984) puts it:

What is required is merely the conduct of the reasonable person of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care.

That statement of hornbook law (literally) necessarily carries with it a requirement of different conduct in differing circumstances (*id.* at 208, footnotes omitted and emphasis added):

The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. *As the danger becomes greater, the actor is required to exercise caution commensurate with it.*

Thus the duty is always one of *ordinary* care, but ordinary care requires a greater

1. Owens-Corning's motion has been joined—unnecessarily—by defendants Eagle-Picher Industries, Inc., Standard Asbestos Manufacturing & Insulating Company and Celotex Corporation.

This Court's disposition of the motion would of course affect all defendants equally, whether or not they joined in seeking dismissal.

exercise of caution where there are greater risks of injury.

Two of the Illinois cases on which Krull places heavy reliance actually confirm the just-stated principles.[2] Neither applies a standard somehow "greater than that of ordinary care." *Dabrowski v. Illinois Central Railroad Co.*, 303 Ill.App. 31, 41, 24 N.E.2d 382, 387 (1st Dist.1939) stated simply (citations omitted):

> The rule of law undoubtedly is that when an article is inherently dangerous the owner of it must use the degree of care commensurate with the dangerous character of the article.

*German v. Illinois Power Co.*, 115 Ill. App.3d 977, 71 Ill.Dec. 749, 451 N.E.2d 903 (5th Dist.1983) discussed precisely the same misapprehension Krull displays here. *German* was a negligence action by a worker severely injured when his forklift came into contact with a utility's high voltage electrical transmission lines. At trial the jury was instructed (*id.* at 984, 71 Ill.Dec. at 754, 451 N.E.2d at 908) the utility had a duty to use a "high degree of care" in protecting the plaintiff from the danger of the power line. That term was defined as "the degree of care commensurate with the known danger involved in the distribution of electricity which a reasonably careful person would use under circumstances similar to those shown by the evidence."

On appeal Illinois Power contended the instruction was erroneous because the utility owed German only an ordinary duty of care. Though the court agreed in principle, it found the instruction consistent with the duty of ordinary care (*id.* at 985, 71 Ill.Dec. at 755, 451 N.E.2d at 909):

> Considering the dangerous nature of electricity, the "circumstances" here present, reasonable care would seem to be the same as a high degree of care.

■ All this may seem a matter of mere semantics, but it nevertheless mandates dismissal of Count III. Krull has failed to show a legal basis for applying a standard to defendants greater than the duty of ordinary care asserted in Count II. Consistent with that standard, of course, he may attempt to show (as his Mem. 4–5 says) asbestos is an "inherently dangerous" product requiring manufacturers to take "special precautions" and otherwise exercise a high degree of care.

### Conclusion

Complaint Count III is dismissed. For the reasons discussed in this opinion, that dismissal will not inhibit Krull's proof on the issue of ordinary care.

---

2. Krull's Memorandum also discusses *Watts v. Bacon & Van Buskirk Glass Co.*, 20 Ill.App.2d 164, 155 N.E.2d 333 (3d Dist.1958) at some length. *Watts* is really inapposite. It deals not with standards of care as such, but rather with the special standard that must be met before a contractor, having turned over completed work to the building owner, remains liable for personal injuries occurring after the owner has accepted the work.