[No. A044092. Fist Dist., Div. One. May 8, 1990.]

EVA MARIE McDANIEL , a Minor, etc., Plaintiff and Appellant,
v.
SUNSET MANOR COMPANY, Defendant and Respondent.

**COUNSEL**

Bostwick & Tehin and Scott D. Righthand for Plaintiff and Appellant.

Fisher & Hurst, John A. Knutson, George D. Yaron and William Green for Defendant and Respondent.

**OPINION**

**STEIN, J.**—The underlying personal injury action was brought on behalf of a child who nearly drowned in a creek located on property adjacent to

defendant Sunset Manor Company. Plaintiff appeals from an entry of judgment after defendant Sunset Manor's motion for summary judgment was granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 21, 1980, Eva Marie McDaniel, age two years and three months, resided with her parents and siblings in Sunset Manor, a federally funded housing project subsidized by the United States Department of Housing and Urban Development (HUD). This project consisted of approximately 20 buildings. Appellant's unit was situated toward the middle of the complex and included a patio fully enclosed by a six-foot fence and gate. At that time, Sunset Manor had a population of approximately 300 children. On its northern and eastern boundaries, Sunset Manor is bordered by public sidewalk and roadway. On its western boundary, Sunset Manor is bordered by a redwood slat fence standing approximately 6 feet in height and 857 feet in length. On its southern boundary, Sunset Manor is bordered by a similar fence running over 400 feet. Laurel Creek is located to the south of Sunset Manor in an adjacent parcel of land not owned by Sunset Manor. The creek runs in a southwest direction and comes, at its closest, to within 20 to 30 feet of the southeast corner of the Sunset Manor project. At this point the fence ends 10 feet west of the sidewalk which borders the east side of the project. At the time of the accident, the banks of Laurel Creek had a steep vertical drop of seven to eight feet in the area where the accident occurred.

On July 21, 1980, Eva was found floating face down in Laurel Creek approximately 20 feet southwest of the point where the creek runs closest to Sunset Manor. Although the record is unclear regarding the route that Eva took from Sunset Manor to Laurel Creek, the most direct route for a two-year-old child would have been through the fence on the south side of the complex. There was a large hole in the southwest corner of the fence, large enough for an adult to pass through. Eva's brother, Bradley, declared that he saw Eva walk through that gap in the fence before she slid into the creek.[1] Sunset Manor concedes and the record reflects that the fence had numerous holes and was in constant disrepair.

Eva's resultant injuries include profound brain damage and quadriplegia.

---

[1] The trial court did not rule on Sunset Manor's objection to the introduction of Bradley's declaration in opposition to summary judgment. Sunset Manor continues to question Bradley's competency to testify to events occurring when he was three years old. The dispute need not be resolved here, as Bradley's declaration goes to issues of causation rather than duty, the element of plaintiff's case challenged by Sunset Manor's motion.

## DISCUSSION

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ The evidence submitted by the moving party is strictly construed and the evidence submitted in opposition is liberally construed. Doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583, 611 [192 Cal.Rptr. 870].)

■ On appeal, review is limited to the facts shown in the documents presented to the trial judge in making an independent determination of their construction and effect as a matter of law. Thus, this court reviews the action of the trial court for abuse of discretion as to the factual allegations and looks independently at the legal effects of those facts. (*Brooks* v. *Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619 [264 Cal.Rptr. 756]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

The sole issue raised by Sunset Manor's motion for summary judgment concerned whether it owed plaintiff a duty, and the motion was granted on the ground that it did not. Below and on appeal plaintiff argues that Sunset Manor did owe her a duty of care, imposed either by guidelines specifically applicable to HUD projects or by common law tort principles.

## I. The HUD Guidelines

■ We first consider plaintiff's assertion that "regulations" from a HUD manual created and imposed a duty of due care on Sunset Manor to prevent tenants from gaining access to adjacent property. Evidence Code section 669, subdivision (a) states in pertinent part:

"The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

The threshold inquiry is whether the proffered rule is in fact a "statute, ordinance, or regulation of a public entity." (See *Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 848-849 [225 Cal.Rptr. 830] [California Highway Patrol (CHP) internal guidelines do not create mandatory duty under Gov. Code, § 815.6, on the part of the CHP].)

Plaintiff seeks to impose a presumption of negligence by virtue of provisions in the HUD Manual of Acceptable Practices and Minimum Property Standards. While these standards inarguably applied to Sunset Manor by the terms of its mortgage agreement with HUD, HUD did not codify any of its standards in the Federal Register until February 24, 1983—three years after the subject accident. (48 Fed. Reg. 7735.) Moreover, the primary basis for plaintiff's contentions, 24 Code of Federal Regulations, section 200.926, was added still later in 1985.

The statute by its terms embraces only the *"regulation* of a public entity," not its manuals or internal operating procedures. The Legislature's narrow intent in this regard is further indicated by its enactment of Evidence Code section 669.1, which specifically provides that a state government manual setting forth employee guidelines does not automatically constitute a statute for purposes of creating a presumption of negligence. Only after the manual is formally adopted as a statute does this legal effect occur. We believe that the Legislature did not intend the uncodified standards and practices set forth by HUD, a federal agency, to have any greater effect than uncodified state guidelines under Evidence Code section 669.1.

 We thus turn to the common law principles of premises liability to determine if respondent owed a duty to appellant.

*II. Common Law Premises Liability*

Plaintiff does not contend that Sunset Manor is responsible for the existence of a dangerous condition (the creek) on the adjoining property. Nor, can plaintiff successfully claim that Sunset Manor had any duty to enclose its premises with a fence.[2] Rather, it is plaintiff's theory of liability that, given the existence of the nearby creek and the foreseeable conduct of children, Sunset Manor had incurred a duty to maintain in a secure manner the fence it had erected.

---

[2] "There exists no statute, rule or ordinance that requires the building of a fence or barrier on defendant's premises. Plaintiff has cited no precedent or authority holding that a landlord has a duty to fence his premises to keep young children inside. Nor does the owner or possessor of land owe such a duty at common law. (*Corcoran* v. *City of San Mateo* (1953) 122 Cal.App.2d 355, 358 [265 P.2d 102, 39 A.L.R.2d 1448])." (*Brooks* v. *Eugene Burger Management Corp., supra,* 215 Cal.App.3d at p. 1624.)

Of the many factors to be considered in determining whether a duty exists (see *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), the foreseeability of the risk is the chief element and of prime concern in every case. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; see also *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) In *Rowland* the Supreme Court defined the duty owed by possessors of land. That decision abrogated the immunity of a landowner as well as the exceptions to that immunity based on the plaintiff's classification as trespasser, licensee, and invitee. ■ Instead, a landowner now is subject to the general duty of ordinary care: the duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm. (69 Cal.2d at pp. 118-119; see also Civ. Code, § 1714, subd. (a); BAJI No. 8.00 (7th ed. 1986).)

A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger. (*Casas* v. *Maulhardt Buick, Inc.* (1968) 258 Cal.App.2d 692, 697, 700 [66 Cal.Rptr. 44].) A landowner similarly shares that duty to "protect the young and heedless from themselves and guard them against perils that reasonably could have been foreseen." (*Copfer* v. *Golden* (1955) 135 Cal.App.2d 623, 629 [288 P.2d 90].) The determination of the scope of foreseeable perils to children must take into consideration the known propensity of children to intermeddle. (*Id.* at p. 628.)

■ At the time of the injury, plaintiff was not using Sunset Manor's property but had wandered onto adjacent property and only then fell into the creek. Sunset Manor argues that since the peril arose from the features of the adjacent land over which it had no control, it cannot be liable for plaintiff's injuries. Sunset Manor correctly notes that control over the dangerous features on adjacent property is an important consideration in determining the duty of a landowner. (See, e.g., *Brooks* v. *Eugene Burger Management Corp., supra*, 215 Cal.App.3d at p. 1623 [apartment complex owes no duty to minor resident injured on busy adjacent street]; *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [243 Cal.Rptr. 627], and cases cited [supermarket owner owes no duty to customer injured by traffic on adjacent public street]; *Donnell* v. *California Western School of Law* (1988) 200 Cal.App.3d 715, 718, fn. 1, 720 [246 Cal.Rptr. 199] [school owes no duty to law student assaulted on adjacent public sidewalk].)

The fact that the injuries occurred on the adjacent property does not automatically bar recovery. (*Wisher* v. *Fowler* (1970) 7 Cal.App.3d 225, 229 [86 Cal.Rptr. 582] [landowner owes duty to motorist on adjacent highway to maintain property so as not to obstruct road visibility], disapproved on

other grounds in *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 372, fn. 9 [178 Cal.Rptr. 783, 636 P.2d 1121]; *Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701] [same].) Plaintiff contends that the dangerous condition was the dilapidated fence on Sunset Manor's property. Whether this was a risk-creating condition which proximately caused plaintiff's injuries, and Sunset Manor's degree of control over this fence, are questions of fact. (*Sprecher, supra*, 30 Cal.3d at p. 372.)

The pivotal question remains the foreseeability of the harm. (*Wisher* v. *Fowler, supra*, 7 Cal.App.3d at p. 229.) Two cases involving governmental liability, while not precisely on point, are instructive on the issue of foreseeability of harm on adjacent property. In *Holmes* v. *City of Oakland* (1968) 260 Cal.App.2d 378 [67 Cal.Rptr. 197], the six-year-old plaintiff was injured on railroad tracks adjacent to a city street. Demurrer was reversed after the court found sufficient facts pleaded to show that the city could reasonably foresee that children would be attracted to trains and railroad cars and might be injured if reasonable precautions were not taken. In *Jordan* v. *City of Long Beach* (1971) 17 Cal.App.3d 878 [95 Cal.Rptr. 246], plaintiff tripped over a protruding water pipe 12 inches from the city sidewalk, fell and was injured. The court found that, despite the fact that the defective pavement and water pipe were located entirely on private property, it was foreseeably dangerous to those using the adjacent sidewalk and reversed summary judgment.

We think a factual issue is presented whether children living at Sunset Manor could be expected to wander onto neighboring land and venture as far as the creek. (*Gallipo* v. *City of Long Beach* (1956) 146 Cal.App.2d 520, 527-529 [304 P.2d 106] [fact question presented on foreseeability of children leaving highway to follow worn path to pipeline].) This factual issue does not conclude our analysis of whether the trial court abused its discretion in finding no duty, however. ■ Apart from the primary issue of foreseeability, the other factors to be considered in determining whether a duty exists are determined as a matter of law. (*Harris* v. *De La Chapelle* (1976) 55 Cal.App.3d 644, 647 [127 Cal.Rptr. 695], disapproved on other grounds in *Sprecher* v. *Adamson Companies, supra*, 30 Cal.3d at p. 372, fn. 9.) Among those factors are the policy of preventing future harm, the moral blame attached to the defendant's conduct, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, both the cost and the extent of the burden of imposing such a duty; cost and prevalence of insurance for the risk involved. (*Rowland* v. *Christian, supra*, 69 Cal.2d at pp. 112-113.)

■ We believe these legal considerations are resolved in this instance by the heightened duty of care imposed upon one who affirmatively assumes

a task. (Rest.2d Torts, § 323.) ■ Regardless of whether a landlord in a particular situation is dutybound to improve his property, once he undertakes repairs or improvements to the property he has assumed a duty to act with ordinary care. (*Minoletti* v. *Sabini* (1972) 27 Cal.App.3d 321, 324 [103 Cal.Rptr. 528]; see, generally, *Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

■ Sunset Manor argues that because the fence itself did not directly inflict injury on plaintiff, the principles of assumed duty have no application here. While it is true that our consideration of Sunset Manor's duty depends in part on the connection between the conduct and the injury (*Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 112-113), we find that connection sufficiently close to satisfy a duty analysis as a matter of law. A more intensive scrutiny relates instead to the element of proximate causation, an issue not raised below, and which in any event depends on foreseeability of harm, inherently a question of fact. (*Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 808 [198 Cal.Rptr. 208].)

Sunset Manor constructed the fence and affirmatively assumed a duty thereby. Having thus assumed a duty to act with ordinary care with respect to the fence it built, did Sunset Manor then owe the specific duty to either build a reasonably sturdy fence or to quickly effect the repair of the more flimsy wood slats?

Sunset Manor claims that confinement of children played no role in its decision to erect the fence on two sides of the property, and thus it was not incumbent on Sunset Manor to maintain the fence. Sunset Manor introduced a declaration that the fences were intended simply as boundary designations. Plaintiff points to the six-foot-high fence itself—and Sunset Manor's efforts to repair it—as evidence that Sunset Manor undertook to prevent access to Laurel Creek. The slats of the fence were frequently kicked out by resident and nonresident children. Sometimes a week would pass before a hole was repaired. Before plaintiff's accident, parents had complained to Sunset Manor about the holes, specifically because they created a risk that children would wander through the fence and into the creek. There is no evidence that the plaintiff climbed over a secure, intact fence. (Cf. *Betts* v. *City & County of San Francisco* (1952) 108 Cal.App.2d 701, 704 [239 P.2d 456] [seven-year-old boy who drowned after scaling a fence to reach a reservoir was not a foreseeable normal user of public property].) On these facts, this point is incapable of resolution as a matter of law.

The erection of a fence and the duty assumed thereby distinguish this case from the similar situation presented in *Brooks* v. *Eugene Burger*

*Management Corp., supra,* 215 Cal.App.3d 1611. In *Brooks,* plaintiff was one of many children residing in an unfenced apartment complex that fronted on a busy road. He was injured when he walked off the premises, into the road, and was struck by an automobile. The Fifth District, relying on authority such as *Owens* v. *Kings Supermarket, supra,* 198 Cal.App.3d 379, which rejects a landowner's affirmative duty to protect others from dangers over which he has no control, held that the landlord had no duty to *erect* a fence surrounding the apartments. We do not disagree with that holding; however, this case concerns the duty to maintain an existing fence erected by the landowner upon which residents may have relied.

We would also note that the function of a fence, whether intended or illusory, is that of a barrier to prevent free crossing of a boundary line. The illusion created by the fence here was that it was designed to prevent access to the adjacent property and its creek—an illusion which may have heightened the danger. A landlord who makes repairs or improvements on property, which give a deceptive appearance of safety, is subject to liability for injury caused by the condition. (Rest.2d Torts, § 362.)

We think it is reasonably arguable that in the absence of secure fencing, young children would wander away from the premises of Sunset Manor and venture onto the neighboring land. We are unable to conclude from the record as a matter of law that the danger presented by the holes in the fence was not foreseeable. If foreseeable, the duty Sunset Manor assumed by erecting the fence also included the duty to maintain a reasonably sturdy or defect-free fence.

Consequently, we must conclude the trial court erred in resolving this material factual dispute on a motion for summary judgment. (Code Civ. Proc., § 437c.)

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.