Joseph NELSON, a minor, By and Through his natural mother and guardian Cynthia STUCKMAN, Plaintiff and Appellant,

v.

SALT LAKE CITY, a body politic, and the State of Utah, By and Through the Utah State Division of Parks and Recreation, Defendants and Appellees.

No. 940543.

Supreme Court of Utah.

July 5, 1996.

Edward T. Wells, West Valley City, for plaintiff.

Jan Graham, Atty. Gen., Debra J. Moore, Carol Clawson, Asst. Attys. Gen., and Steven W. Allred, Salt Lake City, for defendants.

STEWART, Associate Chief Justice:

Joseph Nelson appeals from orders of the trial court disallowing his claims for personal injury against Salt Lake City and the State of Utah. We reverse the trial court's ruling and remand for trial.

## I. BACKGROUND

On May 16, 1990, Cynthia Stuckman took her four-year-old son Joseph Nelson to watch his brother participate in a free-admission baseball game at a Riverside Park baseball field. Allegedly believing that a secure fence separated the nearby playground from the Jordan River, Nelson's mother allowed him to play there as she watched the baseball game. A short time later, Nelson was found floating face down in the Jordan River. He suffered serious, permanent injuries. On his behalf, his mother brought this suit for damages against the City and the State for negligence in failing to maintain the fence in proper repair.

Riverside Park, owned by Salt Lake City, is bordered on the west by the Jordan River. The playground is located in the northwest corner of the park. A four-foot-high chain link fence separates the playground from the Jordan River Parkway—City-owned but State-managed land bordering on the Jordan River.[1] The parkway provides open access to the Jordan River. The four-foot-high fence is actually the second fence to serve the park. Although there is a factual dispute regarding which governmental entity was responsible for constructing the original fence and the purpose for which that fence was erected, the parties agree that the original fence reached six feet in height and was situated immediately adjacent to the river.[2]

---

1. The State cares for the grounds and clears snow from the trails along the parkway, which has a history of being used by pedestrians to gain access to the river.

2. While some evidence suggests that Salt Lake County constructed the original fence for the purpose of flood control, other evidence indicates that the City erected the fence out of concern for the safety of children playing in the park.

In deference to the State's desire for a parkway, the City allowed the State to dismantle the fence and construct a four-foot-high chain link fence at its current site. The parties disagree over which entity retained responsibility for maintaining the fence.

Nelson alleges that he gained access to the river through a breach in the fence. The breach is due to a missing gate, which an errant driver had knocked down earlier that year. Although aware of the broken gate, neither the State nor the City undertook to repair it.

Initially, Nelson brought action only against Salt Lake City. In a notice of claim dated May 1, 1991, Nelson sought $2 million on a simple negligence claim. The City denied Nelson's notice of claim. Thus, on May 14, 1992, Nelson filed a complaint against the City, alleging negligence, failure to warn of a dangerous condition, and failure to take adequate protective measures. On June 16, 1992, in response to the City's motion to dismiss pursuant to the Limitation of Landowner Liability Act, Nelson filed an amended complaint alleging "willful" conduct.

The City responded to the allegations by noting that even if the complaint were valid, the State of Utah should be joined in the action because it was responsible for maintaining the fence. Consequently, on February 18, 1993, two years and nine months after the accident, Nelson served notice of claim on the Governor and the Attorney General for the State of Utah. On March 16, 1994, Nelson amended the complaint to add the State of Utah as a defendant. On April 22, 1994, Nelson served a notice of claim on the Utah State Division of Parks and Recreation.

The trial court granted the City's motion for summary judgment, concluding that the Jordan River is a natural condition and that the Utah Governmental Immunity Act precluded liability for an injury arising out of a natural condition. It also determined that the Jordan River is a natural waterway for which the City would not be liable even in the absence of the Act. In addition, the trial court determined that the Landowner Liability Act applied, requiring "willful" or "malicious" action for liability. Finally, the court held that by delaying his plea of willfulness until over a year after the date of the accident, Nelson exceeded the time limitations prescribed by the Governmental Immunity Act. Holding that Nelson's complaint against the State was similarly time barred, the trial court granted the State's motion for dismissal.

## II. STANDARD OF REVIEW

On an appeal from a summary judgment, we consider only two questions: whether the lower court erred in (1) applying the governing law, and (2) holding that no material facts were in dispute. *Bushnell Real Estate, Inc. v. Nielson,* 672 P.2d 746, 749 (Utah 1983). Thus, we review the trial court's order of dismissal for correctness. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 196 (Utah 1991). Furthermore, because negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges, "summary judgment is appropriate in negligence cases only in the clearest instances." *Dwiggins v. Morgan Jewelers,* 811 P.2d 182, 183 (Utah 1991).

## III. ANALYSIS

Nelson raises four issues on appeal; the first concerns both the State and the City, while the other three apply only to the City.[3] The issues are (1) whether the action is time barred by the limitations found in the Utah Governmental Immunity Act; (2) whether the action is governed by the Limitation on Landowner Liability Act; (3) whether the governmental entity responsible for maintaining the fence owed Nelson a duty to protect him from falling into the Jordan River; and (4) whether the City is protected by governmental immunity. Additionally, the City asserts that several issues raised by Nelson on appeal are not properly before this Court.

---

**3.** The last three issues will concern the State on remand. However, because the district court relied solely on the time limitation for its dismissal of plaintiff's action against the State, our ruling relating to the time limitation is our only ruling that is binding on the State.

■ We dispose of the first two issues summarily. First, plaintiff asserts that the trial court erred in holding that his minority did not toll the running of the filing period for his claim. We have recently reiterated that the general tolling provisions of Utah Code Ann. § 78–12–36 apply to claims brought by a minor under the Governmental Immunity Act.[4] *Cole v. Jordan School Dist.,* 899 P.2d 776 (1995). Therefore, Nelson had until one year after his eighteenth birthday to bring his claim. Because Nelson clearly complied with this limitation, his claim is not time barred.

■ Next, Nelson argues that the trial court erred in applying the Utah Limitation of Landowner Liability Act, Utah Code Ann. §§ 57–14–1 to –7, to this case. It is unnecessary to examine this question, as the Court has recently held that the Act does not apply to improved public parks. *De Baritault v. Salt Lake City Corp.,* 913 P.2d 743, 747 (Utah 1996).

■ We see no merit in the City's argument that Nelson's failure to list all issues presented for review in his original docketing statement dooms his appeal. Nelson filed timely notices of appeal from both trial court orders. He then submitted a docketing statement that included only those questions of law related to the application of the Limitation of Landowner Liability Act. Nelson subsequently filed an amended docketing statement that included the other issues presented for appeal. The City moved to strike the statement for being untimely filed. The issues Nelson targeted for appeal were stated in his amended docketing statement and were thoroughly discussed in his brief.

The docketing statement is for the benefit of the Court, not the appellee:

It is used by the appellate court in assigning cases to the Supreme Court or to the Court of Appeals when both have jurisdiction, in making certifications to the Supreme Court, in classifying cases for determining the priority to be accorded them, in making summary dispositions when appropriate, and in making calendar assignments.

Utah R.App.P. 9(b). In short, Nelson's failure to list all issues for review in the docketing statement did not affect his right to raise later specified issues for appeal.

### A. Duty Owed to Nelson

Having resolved these preliminary issues, we proceed now to consider whether Nelson has established the required elements of a tort. For the sake of analytical clarity, we will first address the traditional tort issues and then take up the question of immunity. *See Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1164 (Utah 1993).[5]

■ As we recently stated, "Without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Rocky Mt. Thrift Stores Inc. v. Salt Lake City Corp.,* 887 P.2d 848, 852 (Utah 1994); *see Trujillo v. Jenkins,* 840 P.2d 777 (Utah 1992) (determination of landowner's duty of care is question of law). Relying on the public duty doctrine, the City argues that it owed no special duty to Nelson. Under the public duty doctrine, for a governmental entity to be held liable, "the plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the general public at large." *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989); *accord Rollins v. Petersen,* 813 P.2d 1156, 1159 (Utah 1991); *see Owens v. Garfield,* 784 P.2d 1187, 1189 (Utah 1989).

---

4. The provision reads as follows:

If a person entitled to bring an action, other than for the recovery of real property, is at the time the cause of action accrued, either under the age of majority or mentally incompetent and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action.

Utah Code Ann. § 78–12–36.

5. As stated previously,

sound reason and simplicity require analyzing and applying negligence concepts before deciding issues of sovereign immunity because such an analysis avoids "having to make difficult decisions with respect to the difficult discretionary exception doctrine in sovereign immunity cases. Deciding an immunity question first may lead to unwarranted assumptions and confusion about undecided duty problems."

*Duncan v. Union Pac. R.R.,* 842 P.2d 832, 836 n. 1 (Utah 1992) (Stewart, J., dissenting) (quoting *Ferree v. State,* 784 P.2d 149, 153 (Utah 1989)).

■ The common law recognizes a duty of due care on the part of an individual or entity that undertakes, whether gratuitously or for consideration, to perform a duty. Breach of that duty may result in an actionable tort. The Restatement of Torts describes this duty as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1977). As stated by Am.Jur.2d *Negligence* § 208, at 255 (1989), "Where one undertakes an act which he has no duty to perform and another reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care." We relied on this principle in establishing a duty in *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 436 (Utah 1983), and cited it in dictum in *Weber v. Springville City*, 725 P.2d 1360, 1364 (Utah 1986).[6]

■ We have held that a governmental entity has no general duty to fence in waterways. *See Brinkerhoff v. Salt Lake City*, 13 Utah 2d 214, 371 P.2d 211 (Utah 1962). We have not yet decided, and decline to do so here, whether there is a duty to fence in a waterway that is located within or adjacent to a park. However, once an entity undertakes to provide that protection, it is obligated to use reasonable care in providing it. For as long as Riverside Park has been in existence, there has been a fence separating the park from the Jordan River. Guardian Cynthia Stuckman asserts that she reasonably relied upon the integrity of the fence in allowing her son to play alone in the playground.[7] If the jury should choose to believe Stuckman's assertion, then it could find that either the City, the State, or both breached a duty owed to children playing in the park. This holding is supported by case law in several states. *See, e.g., McDaniel v. Sunset Manor Co.*, 220 Cal.App.3d 1, 269 Cal.Rptr. 196 (1990) (holding that federally funded housing project incurred duty when it erected fence on property bordering creek; duty was breached when housing project allowed fence to fall into disrepair); *Lukasiewicz v. City of Buffalo*, 55 A.D.2d 848, 390 N.Y.S.2d 341 (1976) (holding prima facie case against city where child crawled through hole in playground fence and suffered injury on train tracks).[8]

■ Nelson's status as a minor is also relevant to the negligence analysis. As we have long held:

Negligence is the breach of a duty to use due care under the circumstances of the situation. When children are involved, the

6. In *Weber*, the two-and-a-half-year-old plaintiff suffered severe physical and mental injuries resulting from his fall into a creek located on private property. The plaintiff sought damages from the city for failing to protect against such a danger by constructing a fence. As one of his theories of liability, the plaintiff asserted that because the city undertook to maintain the creek, the city assumed responsibility for protecting citizens from hazards associated with it. Specifically, the city shored up the creek's banks and dredged it on occasion. Though citing Restatement § 323 and acknowledging it as the law in this state, we nonetheless held that the duty which the city assumed was unrelated to the protection of its citizens. *Weber*, 725 P.2d at 1364–65. Rather, the city undertook to prevent the consequences of flooding and extensive spring runoff.

7. Although it was Stuckman's reliance that induced Nelson to encounter the danger, we believe that her reliance can be imputed to her child in this case. Reasonable reliance and inducement are concerns related to the chain of causation. According to plaintiff's argument, absent Stuckman's reliance, Nelson would not have suffered the injury.

8. A line of Pennsylvania cases holds contrary to our ruling today. *See Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122 (1989); *Lynch v. National R.R. Passenger Corp.*, 115 Pa.Cmwlth. 474, 540 A.2d 635 (1988). We believe that the Pennsylvania courts misconstrue section 323 of the Restatement to impose no new duty upon landowners. This does not accord with our construction of that section, and these cases are therefore inapposite to the case before us.

duty to look out for their safety is increased, and failure to make a given discovery might be negligence when children are involved and not negligence if adults only are affected. It is a relative thing and generally must be left to the jury to say if under all the circumstances the conduct of the actor measures up to the standards of a reasonably prudent man.

*Wheeler ex rel. Turley v. Jones,* 19 Utah 2d 392, 397, 431 P.2d 985, 988 (1967).

Finally, the parties dispute two issues of causation. First, Nelson maintains that his injury was caused by the breach in the fence, not by the Jordan River. Defendants, by contrast, assert that the river was the proximate cause of the injury. Which condition proximately caused plaintiff's injuries is a question of fact appropriately left for the jury. *See McDaniel v. Sunset Manor,* 220 Cal.App.3d 1, 269 Cal.Rptr. 196, 199 (1990).

■ The City confuses actual cause and proximate cause. While the Jordan River is undoubtedly the actual cause of Nelson's injury, it may not be the proximate cause. *See Little Am. Ref. Co. v. Leyba,* 641 P.2d 112 (Utah 1982). As we previously noted, "It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause." *Bennion v. LeGrand Johnson Constr. Co.,* 701 P.2d 1078, 1083 (Utah 1982).

The second causation issue relates to the path Nelson took to the river. While Stuckman asserts that Nelson entered through the breach in the fence, the City counters that there is no solid proof of this. It suggests that the four-year-old may have scaled the fence or exited at another unspecified opening in the fence. The trial court did not reach any factual conclusions regarding these points, and we cannot do so here. Indeed, the decision appropriately rests with the jury. As Prosser writes:

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 41, at 265 (5th ed. 1984), *quoted in Weber v. Springville City,* 725 P.2d 1360, 1367 (Utah 1986). Nelson's actual path to the Jordan River is for the jury to decide. Although there were no witnesses, other evidence may be sufficient for a jury to find that it was "more likely than not" that Nelson entered through the breach in the fence.

We conclude that Nelson was owed a duty by the party or parties responsible for maintaining the fence. Which party was responsible and whether the breach in the fence was the proximate cause of plaintiff's injuries are factual determinations, appropriately left to the jury.

### B. Immunity

■ Having established that the required elements of a tort are present, we must now consider whether defendants are protected by governmental immunity. Immunity is an affirmative defense which must be proved by the defendant. *See Ambus v. Utah State Bd. of Educ.,* 858 P.2d 1372 (Utah 1993). The City offers two independent grounds supporting its immunity claim: First, it argues that the injury arose out of a natural condition, thus barring recovery under section 63–30–10(11); and in the alternative, the City claims that it is protected by the discretionary function exception of section 63–30–10(1).

Section 63–30–10(11) provides governmental entities with immunity for the negligent acts committed by their employees "if the injury arises out of ... any natural condition on publicly owned or controlled lands." The parties dispute whether Nelson's injuries arose out of the Jordan River, which is a natural condition, or out of the breach in the fence, which is not.

For numerous policy reasons, the Legislature saw fit to grant governmental entities

immunity for injuries resulting from natural waterways and other natural conditions. Utah's vast public lands that are open to the public for recreational uses present all kinds of hazards arising from their natural conditions. Holding the government liable for injuries arising from such hazards would no doubt result in significant restrictions or even prohibitions on the use of such lands. The State and other governmental entities cannot be expected to erect a fence around every waterway or potentially hazardous condition located on public property. *See Brinkerhoff v. Salt Lake City,* 13 Utah 2d 214, 215, 371 P.2d 211, 212 (1962); *Sehy v. Salt Lake City,* 41 Utah 535, 537, 126 P. 691 (1912). Clearly persons who use unimproved lands must assume some risk of injury.

The case before us, however, involves different circumstances. By constructing the fence that separates Riverside Park from the Jordan River Parkway, the City or State undertook to provide protection. Having done so, the responsible party is obligated to exercise reasonable care in maintaining the fence. *See Weber v. Springville City,* 725 P.2d 1360, 1364 (Utah 1986); *DCR Inc. v. Peak Alarm Co.,* 663 P.2d 433, 436 (Utah 1983). Failure to do so could give rise to liability on the part of the responsible party. Thus, we hold that Nelson's suit is not barred by section 63–30–10(11) of the Governmental Immunity Act.

Defendants also assert immunity on the basis of the discretionary function exception to the waiver of immunity. The Act confers immunity for an injury arising out of "the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." Utah Code Ann. § 63–30–10(1). Although the term "discretionary function" is not susceptible to precise definition in all legal contexts, we have held that "discretionary functions are those requiring evaluation of basic governmental policy matters and do not include acts and decisions at the operational level—those everyday, routine matters not requiring 'evaluation of broad policy factors.'" *Hansen v. Salt Lake County,* 794 P.2d 838, 846 (Utah 1990) (quoting *Carroll v.*

*State Road Comm'n,* 27 Utah 2d 384, 389, 496 P.2d 888, 891 (1972)).

■ Nearly all acts performed by government employees involve some amount of discretion. *Carroll v. State Road Comm'n,* 27 Utah 2d 384, 389, 496 P.2d 888, 891 (1972). However, discretionary immunity clearly was not designed to cloak the ancient doctrine of sovereign immunity in modern garb. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 131, at 1032–33 (5th ed.1984). Discretionary immunity is a distinct, more limited form of immunity and should be applied only when a plaintiff is challenging a governmental decision that involves a basic policy-making function. *See Little v. Utah State Div. of Family Servs.,* 667 P.2d 49, 51 (Utah 1983).

■ The City relies on several Utah decisions to support its contention that the responsible party's failure to repair the fence is protected by discretionary immunity; yet each can be easily distinguished from the present facts. In *Duncan v. Union Pacific Railroad,* 842 P.2d 832 (Utah 1992), we held that the discretionary immunity doctrine protected the State from liability for failing to improve a railroad crossing warning device. The Utah Department of Transportation decided which crossings had the highest priority for upgrades. The Department's decision necessarily required discretionary judgments concerning the expenditure of public funds because funds for railroad crossing upgradings were highly limited, many crossings were candidates for upgradings, and only a few could be upgraded each year. *See also Gleave v. Denver & Rio Grande W. R.R.,* 749 P.2d 660 (Utah Ct.App.1988). *Gillman v. Department of Financial Institutions,* 782 P.2d 506 (Utah 1989), involved a similar type of discretionary function where the state failed to suspend or revoke the license of a banking institution that became insolvent.

Here plaintiff's claim does not involve a basic governmental policy-making function. The parties agree that both the State and the City were aware of the breach in the fence. What plaintiff challenges is the decision to

ignore this dangerous condition. The negligence that Nelson alleges relates directly to an operational decision on the part of the governmental entity responsible for maintaining the fence. This decision is not protected by discretionary function immunity.

In sum, we hold that the governmental entity responsible for the fence owed a duty of care to keep the fence in good repair. It is a question of fact for jury determination whether failure to repair the fence proximately caused Nelson's injuries.

Reversed and remanded.

ZIMMERMAN, C.J., and HOWE, DURHAM, and RUSSON, JJ., concur.